UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RACHEL A. SHAFFER,

                Plaintiff,

    -vs-                         **No. 1:14-CV-00745 (MAT)**
                                            **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## I. Introduction

Represented by counsel, Rachel A. Shaffer ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II. Procedural History

The record reveals that on June 28, 2011, plaintiff (d/o/b December 10, 1970) applied for SSI, alleging disability as of June 1, 2011. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge David S. Lewandowski ("the ALJ") on December 3, 2012. The ALJ issued an

unfavorable decision on January 22, 2013. The Appeals Council denied review of that decision and this timely action followed.

### III. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since June 28, 2011, the application date. At step two, the ALJ found that plaintiff suffered from the severe impairment of chronic thoracic and low back pain, secondary to bulging disc at L3-L4. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that she was able to stoop, turn, and twist her back only occasionally; she could only occasionally reach, push, and pull; and she must be afforded a sit/stand option. After finding that plaintiff had no past relevant work, the ALJ determined that, considering plaintiff's age, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ thus found that plaintiff was not disabled.

**V.     Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.     Application of the Treating Physician Rule**

Plaintiff contends that the ALJ did not properly apply the treating physician rule when he accorded little weight to the opinion of one of plaintiff's treating physicians, Dr. Armit Singh. Plaintiff also argues that the ALJ should have further developed the record, because it contained only two treatment notes from Dr. Singh and, according to plaintiff, inadequate records of imaging tests. For the reasons discussed below, the Court finds that the ALJ properly applied the treating physician rule and that the ALJ did not fail in his duty to fully develop the record.

Initially, plaintiff contends that the ALJ failed to develop the record by seeking out additional treatment notes from Dr. Singh, given that the record contained only two treatment notes from Dr. Singh despite plaintiff's testimony that she treated with Dr. Singh approximately every three months for pain management. As

the Commissioner points out, however, the ALJ twice requested treatment notes from Dr. Singh, but received no response. See T. 249. Additionally, at the hearing, the ALJ left the record open for plaintiff's counsel to provide documentation from Dr. Singh, which counsel stated was forthcoming. However, when that documentation was provided, it consisted of only the two treatment notes described below.

Moreover, the administrative record contains a longitudinal record of plaintiff's treatment history with Dr. Syed Raza, as well as records of her treatment in physical therapy. Those records were consistent with Dr. Singh's two treatment notes, which, as discussed below, did not support his restrictive functional assessment. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted). The Court is not persuaded that the absence of treatment notes from plaintiff's pain management treatment constituted an obvious gap in this record.

"Even though the ALJ has an affirmative obligation to develop the record, it is the plaintiff's burden to furnish such medical and other evidence of disability as the Secretary may require." Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989) (internal

citations omitted). Considering the sequence of events that took place in the development of this record, it was reasonable for the ALJ to conclude that Dr. Singh provided all of the relevant documentation on file at his office, and that future requests would produce nothing further. The current controlling regulation, 20 C.F.R. § 416.920b(c), provides that re-contacting the treating physician is an *option* for correcting inconsistencies in the record, but that the ALJ "may choose not seek additional evidence or clarification from a medical source if [the ALJ] know[s] from experience that the source either cannot or will not provide the necessary evidence." See Gabrielsen v. Colvin, 2015 WL 4597548, *5 (S.D.N.Y. July 30, 2015) (noting that the prior regulations were amended "on March 26, 2012 'in order to give adjudicators more flexibility in determining when and how to obtain information from medical sources to resolve an inconsistency or insufficiency in the evidence.'"). Here, the record reflects that the ALJ met his obligation to develop the record, and that, to the extent that the record lacked any treatment notes from Dr. Singh, plaintiff failed to meet her burden to provide those records.

Regarding the ALJ's consideration of Dr. Singh's opinion, the treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in

the record. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

In September 2011, Dr. Singh opined that plaintiff noted diagnoses of low back pain, along with thoracic and lumbar disc herniations, noting findings of tenderness, muscle spasms, impaired sleep, and a bilateral straight leg raise of 65 degrees. In Dr. Singh's opinion, plaintiff could: not walk for one block without experiencing severe pain; sit and/or stand for only 15 to 20 minutes at a time; sit, stand, and/or walk for less than two hours in an eight-hour workday; would need to have period of walking around in an eight-hour workday; would need a job permitting shifting positions between sitting, standing, and walking; would need to take unscheduled breaks every 15-20 minutes as a result of her limitations; and could never twist, stoop, crouch, or climb ladders or stairs. The ALJ rejected Dr. Singh's opinion, finding that it was inconsistent with his own treatment notes, the consulting examination by state agency consultant Dr. Donna Miller, and the substantial evidence of record.

Here, as the ALJ discussed, Dr. Singh's assessment was not consistent with his own treatment notes. The first note, dated April 2010, recorded that plaintiff was referred by Dr. Raza and reported that physical therapy was not resulting in progress in her symptoms of back pain. Plaintiff reported that she experienced tingling, coldness, and numbness in the legs and had difficulty walking and standing, but she was able to do "all her activities of daily living." T. 331. She did not use a cane and had not had any falls. Dr. Singh noted that she was able to take off her shoes and socks, and get on the examination table, without assistance.

On physical examination, plaintiff reported pain with range of motion of the lumbar spine. She stood with a normal lumbar curvature, pelvic crests were level, demonstrated no unsteadiness with Trendelenberg's test and was able to stand on heels and toes. Straight leg raising was performed at 65 degrees bilaterally. She exhibited "very mild tightness" of the hamstrings and "mild tightness" of the hip rotators, while reporting some discomfort. She had no atrophy of the lower extremity musculature, motor power within normal limits, sensory examination was normal, and deep tendon reflexes were "brisk." Id. She reported tenderness "on palpation of the lower thoracic spine and thoracolumbar junction with lesser tenderness noted over the lumbar spine and lumbar paraspinals." Id. Dr. Singh noted that a lumbar x-ray he reviewed, dated March 24, 2010, was normal. His clinical impression was that

plaintiff had "symptoms of a thoracic disc herniation and low back pain with secondary myofascial pain," with possible thoracic myelopathy. Id. He recommended an x-ray of the thoracic spine and a bone scan, and prescribed pain medication.

In September 2012 (approximately a year after Dr. Singh's opinion), plaintiff reported continued lower back pain as well as numbness in her legs and feet. On examination, she reported "marked discomfort with range of motion of the lumbar spine," and stood with a list to the right. Dr. Singh noted "marked spasm of the right lumbar paraspinals, with increased tenderness over the lumbar spine and paraspinals and lesser tenderness over the thoracic spine. Dr. Singh's clinical impression was that plaintiff had "thoracic pain with lumbar disc degeneration with annular tear and low back pain with lumbar radiculopathy and secondary myofascial pain," again with possible thoracic myelopathy.

A review of the two treatment notes in the record substantiates the ALJ's conclusion that Dr. Singh's opinion was inconsistent with these notes, one of which actually postdated his opinion. Although plaintiff did report some tenderness and, subsequent to Dr. Singh's opinion, exhibited some spasm, Dr. Singh's notes also reflected various unremarkable findings. Considering those findings, along with the substantial evidence in the record which the Court will summarize below, the Court

concludes that the ALJ properly applied the treating physician rule.

Imaging tests were largely unremarkable.[1] The x-rays ordered by Dr. Singh included an x-ray of the thoracic and lumbosacral spine dated March 2010, which was unremarkable except for a "hint of mid dorsal right scoliosis," some of which was noted "could be positional." T. 190. A lumbosacral spine series taken at the same time indicated an impression of a "normal lumbosacral spine," with an "[i]ncidental note . . . of moderate obstipation." T. 191. A bone scan was also normal. In September 2011, an x-ray of plaintiff's lumbosacral spine showed no significant bony abnormality, with "relatively well maintained" height of vertebral bodies and intervertebral disc spaces. T. 240. An x-ray of plaintiff's thoracic spine revealed "mild dextroscoliosis." T. 241.

Two relevant emergency room records, dated July 2010 and November 2011, respectively, revealed no significant findings on examination. Plaintiff was given pain medication and discharged immediately. Treatment notes from Dr. Syed Raza, which appear intermittently for the time period of February 2010 through August

---

[1] The Court notes plaintiff's argument that the ALJ should have sought additional imaging tests based on Dr. Singh's noted review of a "normal" lumbar x-ray and assessment that plaintiff suffered from an annular tear. A review of the record reveals various imaging results, however, and Dr. Singh's two treatment notes do not indicate the presence of any additional probative evidence. Therefore, the record in this regard appears complete, and the ALJ did not err in failing to seek out additional imaging test results. See Rosa, 168 F.3d at 79 n.5.

9

2012, indicate that plaintiff consistently reported tenderness to palpation and exhibited some limitations in extension and flexion. Plaintiff exhibited no progress in physical therapy, despite normal range of motion and strength testing results. She reported hypersensitivity, which her therapist indicated may "suggest a neurologic issue," but no evidence of such issue appears in the record. T. 261.

In September 2011, Dr. Donna Miller performed a consulting examination at the request of the state agency. Plaintiff reported back pain "at a 9/10 intensity," which radiated to her calves bilaterally; a bulging disc at L3-L4; pain between her shoulder blades; and tenderness to palpation. As to activities of daily living, plaintiff reported cooking 14 times per week; cleaning once a week; doing laundry once a week; shopping once a week; showering and dressing daily; watching television; listening to the radio; and reading.

On examination, plaintiff's gait was slightly hesitant; she could heel-toe walk with no difficulty; her squat was 75 percent of normal; stance was normal; she used no assistive devices and needed no help changing for the exam or getting on or off the exam table; and she was able to rise from her chair without difficulty. Her cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. She exhibited no scoliosis, kyphosis, or abnormality of the thoracic spine. Lumbar

flexion was to 50 degrees, extension zero degrees, and lateral flexion 25 degrees bilaterally. Plaintiff declined to do rotation and straight leg raising was negative. She exhibited full range of motion of the shoulders, elbows, forearms, and wrists bilaterally, with no additional abnormalities noted. Strength was full, 5/5, in the upper and lower extremities. Dr. Miller opined that plaintiff had "mild limitation for repetitive heavy lifting, bending, turning, twisting, reaching, pushing, and pulling." T. 238.

As the above summary reveals, plaintiff's treatment records as well as imaging tests and Dr. Miller's consulting opinion constitutes substantial evidence contradicting Dr. Singh's extremely restrictive functional assessment. Dr. Singh's own treatment notes, which were sparse although the record reveals that he was contacted multiple times and asked to provide them, did not indicate any significant clinical findings supporting his restrictive assessment. Imaging tests were essentially normal, and Dr. Miller found only mild limitations in various functional activities, a finding which was supported by the record.

Although plaintiff argues that the ALJ failed to consider the factors set out in the regulations for consideration of a treating source's opinion, an ALJ need not explicitly discuss each of the factors, but rather must apply "the substance of the treating physician rule." Halloran, 362 F.3d 28, 32 (2d Cir. 2004); see Atwater v. Astrue, 2013 WL 628072, *2 (2d Cir. 2013) ("[S]lavish

11

recitation of each and every factor [is not required] where the ALJ's reasoning and adherence to the regulation are clear."). The ALJ's decision in this case contains a detailed discussion of the record and sound reasoning, supported by substantial evidence, for rejecting Dr. Singh's opinion. It is apparent from the decision that he applied the substance of the treating physician rule. Therefore, his decision will not be disturbed.

### B. Credibility

Plaintiff contends that the ALJ "mischaracterized" the record in an effort to "diminish" plaintiff's credibility. The Court disagrees. Upon a review of the entire record and a reading of the ALJ's decision, the decision reflects a thorough summary of the record evidence and a reasoned consideration of plaintiff's credibility. The ALJ specifically found that plaintiff was not credible as a result of various inconsistencies between her hearing testimony and her own reports, including reports she gave in her adult function report and at the consulting examination with Dr. Miller. The ALJ gave specific examples of the inconsistencies, noting that plaintiff reported in her adult function report, and to Dr. Miller, that she was able to do a wide variety of activities of daily living without requiring assistance.

The ALJ also found that plaintiff produced very little evidence of a severe disabling condition, a finding which is supported by substantial evidence as discussed above. Finally, the

ALJ noted that plaintiff's treatment for her condition was essentially routine and conservative, consisting of medication management and physical therapy. Upon review of the record, substantial record evidence supports all of the ALJ's reasons for declining to fully credit plaintiff's subjective accounts. As the Second Circuit has repeatedly noted, "the ALJ [has] discretion to weigh the credibility of [a claimant's] testimony 'in light of the other evidence in the record.'" Penfield v. Colvin, 563 F. App'x 839, 840 (2d Cir. 2014) (quoting Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)).

Plaintiff also argues that the ALJ erred in finding plaintiff incredible "to the extent [her reports were] inconsistent with the above residual functional capacity assessment." T. 23. However, the ALJ did not merely compare plaintiff's complaints to his own RFC finding. Rather, as described above, the ALJ's credibility assessment was actually quite detailed, and it was supported by substantial evidence. Therefore, this case is distinguishable from those cited by plaintiff, which involve boilerplate credibility determinations based simply on the comparison of a plaintiff's complaints to the ALJ's RFC finding, with no attendant consideration of the evidence in the record. See, e.g., Molina v. Colvin, 2014 WL 3445335, *14 (S.D.N.Y. July 15, 2014) ("The ALJ's conclusory reasoning is unfair to the claimant, [where] subjective statements about his symptoms are discarded if they are not

13

compatible with an RFC that has been predetermined based on other factors."); Gehm v. Astrue, 2013 WL 25976, *5 (N.D.N.Y. Jan. 2, 2013) ("A claimant's credibility may be questioned if it is inconsistent with the medical evidence. However, it is improper to question the plaintiff's credibility [solely] because it is inconsistent with the RFC determined by the ALJ.").

**VI. Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 10) is denied and the Commissioner's motion (Doc. 12) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                    HON. MICHAEL A. TELESCA
                                    United States District Judge

Dated:    December 21, 2015
             Rochester, New York.